UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TERRELL BLAND,<br><br>        Petitioner,<br><br>    v.<br><br>MARCUS POLLARD, Acting Warden,[1]<br><br>        Respondent. | Case No.  19-cv-02273-YGR (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; AND DENYING CERTIFICATE OF APPEALABILITY** |

Before the Court is the *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner Terrell Bland challenging his 2015 conviction and sentence rendered in the Marin County Superior Court.

On April 4, 2014, the Marin County District Attorney filed an information charging the Petitioner and his co-defendant, Labraun Wallace, with second degree robbery under California Penal Code § 211.  Resp't Ex. 1, Clerk's Transcript ("CT") 215.  The information alleged that the offense was committed for the benefit of, at the direction of, and in association with a criminal street gang under California Penal Code § 186.22(b).  CT 222.  The information also alleged that Petitioner had a prior strike conviction under California Penal Code § 667(b)-(i) and a prior conviction of a serious or violent felony under California Penal Code § 667(a)(1).  CT 256.  On February 6, 2015, the jury found Petitioner guilty of robbery and acquitted Wallace.  CT 431; *People v. Bland*, Nos. A146674, A150889, 2017 WL 5899225, *3 (Cal. Ct. App. Nov. 30, 2017). Petitioner waived jury trial on the other allegations, and the court found them to be true.  2CT 431; Resp't Ex. 2, Reporter's Transcript, vol. 10 ("10RT") 844, 848-851.

The court imposed an aggregate fifteen-year prison term in the instant case, and an additional consecutive term of two years and eight months in an unrelated case.  CT 619-621, 624.

Before the Court is Petitioner's federal habeas petition in which he claims that the trial

---

[1] Marcus Pollard, the current acting warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1  court erred in admitting evidence of a gun and a bullet found in his child's mother's apartment.

2  Dkt. 1 at 5.

3       Respondent has filed an answer to the petition.  Dkt. 14.  Petitioner has not filed a traverse.

4       Having read and considered the papers filed in connection with this matter and being fully

5  informed, the Court hereby DENIES the petition for the reasons set forth below.

6  **I.**      **BACKGROUND**

7       **A.**     **Statement of Facts**

8       The following factual background is taken from the November 30, 2017 opinion of the

9  California Court of Appeal:[2]

> 10  On January 10, 2014 Manuel A.[FN 2] was parked in a San Rafael
> parking lot when Bland approached him and asked about the odor of
> 11  marijuana coming from his car.  Bland introduced himself as "Tip"
> and asked the victim if he had any marijuana to sell.  The victim
> 12  offered a sample of marijuana, gave Bland his phone number and said
> to call if he needed anything.
> 13
> [FN 2]: We will refer to Manuel A. as the victim to preserve his
> 14  privacy.  We intend no disrespect by this practice.
>
> 15  A couple of weeks later Bland called the victim to ask if he could
> "hook him up with a sack, with an ounce of marijuana."  The victim
> 16  agreed to meet Bland in Marin City, but when he got into town he
> called Bland who said he no longer needed it.  A couple of weeks after
> 17  that Bland called the victim again, this time asking for "at least a
> couple pounds . . . around four."  The victim said he would see what
> 18  he could do.  Later he called Bland back to tell him he had the
> requested amount.  Bland told the victim to meet him at the Best Buy
> 19  in Marin City.  The victim drove there, but when he saw a sheriff in
> the parking lot he called Bland and told him to meet in front of a
> 20  nearby Outback Steakhouse.  Bland drove up and parked alongside
> the victim's car in front of the restaurant.  Another man was in the car
> 21  with Bland.
>
> 22  Bland got into the victim's car.  The victim showed him the marijuana
> he had for sale, which was in a garbage bag in the back seat, and told
> 23  him about the product while Bland texted on his phone.  As the victim
> spoke he noticed that Bland's passenger had gotten out of the car and
> 24  was smoking a cigarette.  The man was tall and lean and was wearing

25  _____

26      [2] The Court has independently reviewed the record as required by AEDPA.  *Nasby v.*
*McDaniel*, 853 F.3d 1049, 1055 (9th Cir. 2017).  Based on its independent review, the Court finds
27  that it can reasonably conclude that the state appellate court's summary of facts is supported by the
record and that this summary is therefore entitled to a presumption of correctness, *Taylor v.*
28  *Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004), *abrogated on other grounds*, *Murray v. Schriro*,
745 F.3d 984, 1000 (9th Cir. 2014), unless otherwise indicated in this order.

United States District Court
Northern District of California

a black hoodie and pants.  Bland said "oh, he's cool," and reassured the victim the man was a friend.

Bland said that "he had to go to San Rafael and that he'll be back and he'll call" when the friend for whom he was arranging the sale arrived in town.  Bland called back later, said his buddy was almost in town, and arranged for the victim to meet them near the Burger King in Marin City.  The sun was setting when the victim arrived and parked where Bland directed him.  Bland's car was parked across the street, but Bland was not in it.  The victim called him twice.  Bland answered the second time.  He said he had to do something in his house and would come out in a moment.

While he was waiting the victim noticed a couple of people walking around talking on their cell phones, including a heavyset man he later identified as Bland's co-defendant Wallace.  The victim looked down to text his wife.  When he looked up he saw Bland walking along the curb.  Bland stepped off the curb, raised his arm and looked to the right.  When he saw the victim watching him he "pretty much got back onto the curb and started walking toward my car."  Bland got in the front seat said they had to wait for his friend.  He told the victim he lived in the adjacent house and that they were going to use his garage.

After a couple of minutes Bland began using his phone.  The victim noticed Wallace cross the street and walk toward his car.  Bland identified Wallace as the friend who had the money and wanted to buy the victim's marijuana.  Wallace got in the back of the victim's car behind Bland.  At Bland's suggestion, the victim agreed to go into Bland's garage to weigh the marijuana.  The victim got out of the car, opened the door behind the driver's seat and grabbed the garbage bag of marijuana.

The victim followed behind as Bland walked toward what he had identified as his house.  Wallace at first stayed by the victim's car, but as the victim started up the walkway toward the door Bland slowed his pace and Wallace came up from behind.  The victim heard a loud click and looked back to see Wallace pointing a black semiautomatic gun at him.  Wallace ordered him to drop what he had and get down.  The victim dropped the marijuana.  Then the man in the black hoodie he had seen with Bland at the Outback restaurant ran from near Bland's car toward the victim, and another man he had seen walking around the area approached with another gun and put it to the victim's head.  The man in the black hoodie got behind the victim, told him to "get down, this is the hood, nigger, we'll shoot," and put a gun to his head.  The victim complied.

Just before the victim hit the ground he saw Bland standing against a wall about 10 or 15 feet away.  The victim did not see Bland with a gun.  Three guns were pointing at the victim, one at the back of his head, one at the front of his head, and one at his ribs.  Two of the guns were black and one was a "silverish dark metallic gun."

As the victim lay face down on the ground he saw Wallace cross toward the bag of marijuana "and I heard rustling with the bag, and everything."  Bland left in the direction of his car.  The other men

3

took the victim's keys and phone, then ran away.  The men had taken approximately four pounds of marijuana worth $8,000 to $10,000.

Later that night the victim identified Bland's photograph from a nine-picture photo lineup.  Police found approximately two pounds of marijuana in the victim's car, which he said was for his personal use.

Several weeks later the victim was installing cabinets about a half mile from where he was robbed.  From the garage where he was working he saw Bland talking to a man and then walk away toward an apartment complex.  As the victim drove away 15 or 20 minutes later he saw Bland in his parked car, apparently about to drive off.  Bland pulled up alongside the victim's car at a stop sign.  The victim was frightened.  Bland said "I ain't going to do anything to you, I'm not going to hurt you."  He had a "smirk on his face . . . . [J]ust like—it was just not a nice smirk, you can say.  It wasn't—it was like, you know, saying, oh, yeah, we got you, you know."  The victim told Bland that "this wasn't over yet.  Meaning this whole situation that was going on, it wasn't over."  Bland followed him as he drove away, so the victim pulled up in front of the sheriff's substation and parked.  Bland parked behind him and got out of the car.

The victim approached.  Bland told him that they "got mugged by the same people" and "there's stuff that [they] need[ed] to clear up."  The victim said his story was "BS" because Bland was able to retain his keys and drive off after the robbery, and because the victim had seen two of the robbers with him earlier.  Bland walked into the sheriff's station, followed by the victim.  He told the desk clerk or deputy "that we needed to speak with somebody because we needed to clear stuff up."  Deputy Kashak, who had responded on the night of the robbery, observed Bland and the victim arguing and pushed the victim outside to separate them.  The victim told Kashak he was scared and asked why Bland was not in jail.

In late April police found an unloaded .22 caliber semiautomatic pistol and an unspent .45 caliber round in the top drawer of a TV stand in the Marin City apartment occupied by Bland's child and her mother.  In the same drawer police also found a PG & E rebate check made out to Bland and a Marin County Superior Court form, both addressed to Bland at that address.  Two California identification cards and a high school diploma in Bland's name were found on a table near the nightstand.  Police had seen Bland enter and leave the apartment without knocking on several occasions.

Phone records showed Bland called Wallace's phone once on January 9, and five calls between Bland's and Wallace's phones between 12:12 a.m. and 3:24 p.m. on January 12.  Wallace's phone also contained a screenshot of a news article about the robbery.

Bland and Wallace were charged with second degree robbery.  The jury found Bland guilty and acquitted Wallace.  The court also found true enhancement allegations that Bland had a prior strike conviction and a prior conviction of a serious or violent felony.

*Bland*, 2017 WL 5899225, *1-3 (footnote in original and brackets added).

United States District Court
Northern District of California

### B.    Procedural History

#### 1.    Post-Conviction Appeals and Collateral Attacks

Petitioner appealed the trial court decision, and on November 30, 2017, the California Court of Appeal affirmed Petitioner's conviction and denied his state habeas petition, which was consolidated with his appeal.  Resp't Ex. 10; *Bland*, 2017 WL 5899225, *9.  On March 14, 2018, the California Supreme Court denied review.  Resp't Ex. 12.

#### 2.    Federal Court Proceedings

On April 26, 2019, Petitioner filed the instant federal habeas petition.  Dkt. 1.  Petitioner's sole claim is that the trial court erred in admitting evidence of a gun and a bullet found in his child's mother's apartment.  *See id.*

This matter was originally assigned to Magistrate Judge Robert M. Illman.  Dkt. 3. Thereafter, the case was reassigned to the undersigned.  Dkt. 5.

On July 26, 2019, the Court dismissed this action because Petitioner failed to perfect his application to proceed *in forma pauperis* or pay the $5.00 filing fee.  Dkt. 7.

On August 7, 2019, the Court reopened this case because Petitioner paid the full filing fee. *See* Dkt. 11.  Also on the same date, the Court issued an Order to Show Cause.  Dkt. 5.

On October 7, 2019, Respondent filed an answer.  Dkt. 14.  Even though Petitioner was given the opportunity to do so, he has not filed a traverse, and the time frame for doing so has passed.  The matter is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

United States District Court
Northern District of California

1    the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong

2    applies both to questions of law and to mixed questions of law and fact, *see Williams (Terry) v.*

3    *Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual

4    determinations, *see Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

5           A state court decision is "contrary to" Supreme Court authority, that is, falls under the first

6    clause of section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

7    reached by [the Supreme] Court on a question of law or if the state court decides a case differently

8    than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams (Terry)*, 529

9    U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court

10   authority, falling under the second clause of section 2254(d)(1), if it correctly identifies the

11   governing legal principle from the Supreme Court's decisions but "unreasonably applies that

12   principle to the facts of the prisoner's case."  *Id.* at 413.  The federal court on habeas review may

13   not issue the writ "simply because that court concludes in its independent judgment that the

14   relevant state-court decision applied clearly established federal law erroneously or incorrectly."

15   *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.

16   *Id.* at 409.

17          Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will

18   not be overturned on factual grounds unless objectively unreasonable in light of the evidence

19   presented in the state-court proceeding."  *See Miller-El*, 537 U.S. at 340; *see also Torres v.*

20   *Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).  Moreover, "a determination of a factual issue made

21   by a State court shall be presumed to be correct," and the petitioner "shall have the burden of

22   rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C.

23   § 2254(e)(1).

24          On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating

25   state-court rulings" and "demands that state-court decisions be given the benefit of the doubt."

26   *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted).  Specifically, in

27   determining whether a state court's decision is contrary to, or involves an unreasonable application

28   of, clearly established federal law, courts in this Circuit look to the decision of the highest state

6

court to address the merits of the petitioner's claim in a reasoned decision.  *See Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192 (2018); *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  The last reasoned decision in this case is the state appellate court's unpublished disposition issued on November 30, 2017, in which that court considered multiple claims, including the claim from the instant petition.  *See* Resp't Ex. 10; *Bland*, 2017 WL 5899225, *3-5.

Even if constitutional error is established, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining the jury's verdict."  *Penry v. Johnson*, 532 U.S. 782, 795-96 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).

## III.    DISCUSSION

Petitioner's sole claim is that the trial court erred in admitting evidence of a gun and a bullet found in the search of his child's mother's apartment.  Dkt. 1 at 5.

### A.    Applicable Federal Law

A federal writ of habeas corpus will not be granted for an erroneous admission of evidence unless a specific constitutional guarantee is violated, or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986). Evidence violates due process only if "there are no permissible inferences the jury may draw from the evidence."  *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991).  Evidence must "be of such quality as necessarily prevents a fair trial" for its admission to violate due process.  *Id.* (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986)).  Notwithstanding the above, the Ninth Circuit has observed that:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.  Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

*Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal citation omitted) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established

United States District Court
Northern District of California

federal law under section 2254(d).  Therefore, "[u]nder AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court." *Id.* (quoting 28 U.S.C. § 2254(d)).  In addition, the Supreme Court has left open the question of whether admission of propensity evidence violates due process. *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991); *see also Alberni v. McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006) (recognizing that Supreme Court has expressly concluded that whether a petitioner's due process right is violated by the admission of propensity advice is an "open question").

Finally, the failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. *Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Jammal*, 926 F.2d at 919.  While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated. *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983).  The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).  But only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *See Jammal*, 926 F.2d at 920.

## B.   Factual Background

The state appellate court described the factual background on Petitioner's claim involving the "gun evidence[3]":

> The court ruled in limine that the prosecution could introduce the gun evidence as circumstantial evidence that Bland had access to a gun and had the means to provide a gun to the other robbers.  It explained: "On page 17 of the motion [the prosecutor's] argument is that the possession of a gun two months after the charged offenses are relevant because the guns match the description of the guns used in the robbery and those guns were never recovered.  Also the People point out that Mr. Bland was not armed at the time of the offense.  This is independent circumstantial evidence that he had access to a gun and

---

[3] In the state court decision, the state appellate court referred to "the gun and bullet jointly as the gun evidence." *Bland*, 2017 WL 5899225, *1 n.1.

United States District Court
Northern District of California

1         may have provided or had the means to provide a gun to others.  [¶]
2         So . . . it seems to me that it's circumstantial evidence to support the
        prosecution's case that this—that Mr. Bland had access to guns and
3         these may be the guns in question.  So I wasn't really ruling on it under
        [section] 1101(b)."

4         Defense counsel objected that there was no link between the gun
        found in the nightstand and the guns used in the robbery, but the court
5         reiterated, "I think the idea that a gun arguably was in Mr. Bland's
6         possession within two months of the charged offense is circumstantial
        evidence that he may have been involved in the offense.  And so that's
7         how it's coming [in]."

8
9 *Bland,* 2017 WL 5899225, *3-4 (footnote in original and brackets added).

10     **C.**     **Analysis**

11         Petitioner claims that the admission of the gun and bullet evidence found in the drawer of

12 the nightstand in his child's mother's apartment violated his right to due process. Dkt. 1 at 5.  He

13 notes that the .45 caliber round recovered from the apartment was too large for the gun recovered

14 from the apartment.  *Id.* at 8 (citing 9RT 540-541, 545).  He adds that the police "never showed

15 the gun recovered during the search to [the victim] to ascertain whether it has been used in the

16 robbery.  *Id.* (citing 9RT 548).  Petitioner also argues that there was no evidence linking the bullet

17 admitted in evidence to the crime, and thus it was entirely irrelevant under California Evidence

18 Code §210.[4] Dkt. 1-1 at 9.  He further explains that since the bullet did not fit the gun recovered,

19 the bullet evidence indicated he may have had multiple guns, which constituted further evidence

20 of his bad character.  *Id.* (citing 9RT 540-541, 545).  Petitioner claims this error was prejudicial, in

21 light of the weakness of the prosecution's case.  *Id.*

        Petitioner seems to argue that it was error to admit the aforementioned gun and bullet

22 evidence as relevant under California Evidence Code § 210 and that such evidence should

23 otherwise have been excluded under California Evidence Code § 352.[5]  Specifically, Petitioner

24

25         [4] California Evidence Code § 210 states that evidence is relevant if it has "any tendency in
26 reason to prove or disprove any disputed fact that is of consequence to the determination of the
action."

27         [5] Under California Evidence Code § 352,  a trial court is to exclude evidence where the
28 probative value of the evidence is substantially outweighed by the potential for prejudice.

United States District Court
Northern District of California

contends that the admission of such evidence was prejudicial because it amounted to propensity evidence. *See id.* at 8-9.

As an initial matter, to the extent that Petitioner is challenging the admission of allegedly prejudicial evidence—such a claim does not present a violation of clearly established federal law as required for habeas relief under AEDPA. *Holley*, 568 F.3d at 1101 (finding that the Supreme Court has not yet clearly ruled that the admission of irrelevant or overtly prejudicial evidence constitutes a due process violation). Absent clearly established federal law, a federal court evaluating a habeas claim cannot conclude that a state court's admission of evidence was contrary to, or unreasonably applied, Supreme Court precedent. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008). Accordingly, the admission of the gun and bullet evidence, as a matter of law, does not warrant habeas relief since there is no controlling Supreme Court precedent for the state appellate court's decision to contravene. Even if the claim were cognizable, for the reasons that follow, the Court finds that it fails on the merits.

In rejecting this claim, the California Court of Appeal found Petitioner had access to the gun and bullet and thus such evidence was properly admitted as circumstantial evidence of his involvement in the robbery, stating as follows:

> Here, Bland had been seen walking in and out of the apartment in January 2014 "with no key, without knocking." Several months after the robbery, police found a PG&E rebate check and a court form in Bland's name and mailed to him at the apartment's address in the same drawer as the gun and bullet. Two California IDs and a diploma in his name were found nearby. This evidence supports reasonable inferences that Bland had access to a gun and may have supplied one of the weapons used in the robbery. "'When the specific type of weapon used to commit a [crime] is not known, it may be permissible to admit into evidence weapons found in the defendant's possession some time after the crime that could have been the weapons employed. There need be no conclusive demonstration that the weapon in defendant's possession was the murder weapon.'" (*People v. Cox* (2003) 30 Cal. 4th 916, 956, disapproved on another point in *People v. Doolin* (2009) 45 Cal. 4th 390, 421, fn. 22; *People v. Rinegold* (1970) 13 Cal. App. 3d 711, 720.) In *People v. Carpenter* (1999) 21 Cal.4th 1016, 1052, for example, the Supreme Court explained the trial court properly admitted testimony that the defendant showed the witness a gun that resembled the murder weapon. "Although the witnesses did not establish the gun necessarily was the murder

10

weapon, it might have been . . . .  The evidence was thus relevant and admissible as circumstantial evidence that he committed the charged offenses." (*Ibid*; see *People v. Neely* (1993) 6 Cal. 4th 877, 896; see also *People v. Lane* (1961) 56 Cal. 2d 773, 784-785; see also *People v. Riser* (1956) 47 Cal. 2d 566, 577, overruled on another point in *People v. Chapman* (1959) 52 Cal. 2d 95, 98.) So too here.[FN 4]

[FN 4]: Because the gun evidence was properly admitted as circumstantial evidence of Bland's involvement in the robbery, we will not address his further argument that it was inadmissible to prove identity under Evidence Code section 1101.  We observe, however, that the court expressly admitted the evidence as relevant circumstantial evidence, and did not consider it to be "other acts" evidence admissible under section 1101, subdivision (b).

*Bland,* 2017 WL 5899225, *3-4 (footnotes in original and brackets added).

In determining that the gun and bullet evidence were admissible, the trial court considered the parties' arguments outside the presence of the jury.  6RT 75-79, 83-84; 7RT 211-214; 8RT 315-317; *see also* 1CT 285-286, 299.  Petitioner's attorney objected to the admission of such evidence, arguing that the prosecution was using it "just [as] a smear tactic" and that it was irrelevant.  6RT 77.  As mentioned above, the trial court overruled the objection, finding that the evidence was admissible as relevant circumstantial evidence that Petitioner "had access to guns and these may be the guns in question."  8RT 316.  The state appellate court agreed with that determination, finding, among other things, that the circumstantial evidence tying Petitioner to the gun and bullet evidence "support[ed] reasonable inferences that [Petitioner] had access to a gun and may have supplied one of the weapons used in the robbery."  *Bland,* 2017 WL 5899225, *4.  Specifically, the evidence on the record supports such a finding.  In January of 2014, Deputy Dahlberg witnessed Petitioner entering and leaving his child's mother's apartment without knocking.  8RT 266-267.  In that same apartment, Deputy Gullett found a PG&E rebate check made out to Petitioner *at that address* and a Marin County Superior Court form in the same drawer as an unloaded .22 caliber Taurus semiautomatic pistol.  9RT 539-543.  Deputy Gullett also found two California identification cards and a diploma in Petitioner's name in a table by the nightstand.  9RT 545-546.  Thus, the state appellate court concluded that the gun and bullet evidence was "relevant and admissible as circumstantial evidence."  *Bland,* 2017 WL 5899225, *4 (citing *People v. Cox*, 30 Cal. 4th 916, 956 (2003) *disapproved on another point in People v. Doolin*, 45

11

Cal. 4th 390, 421, fn. 22 (2009) ("When the specific type of weapon used to commit a [crime] is not known, it may be permissible to admit into evidence weapons found in the defendant's possession sometime after the crime that could have been the weapons employed. There need be no conclusive demonstration that the weapon in defendant's possession was the murder weapon.")).

The state court's factual finding that the gun and bullet evidence was relevant circumstantial evidence is entitled to a presumption of correctness under section 2254. *Dyer v. Calderon*, 151 F.3d 970, 975 (9th Cir. 1998) ("So long as the fact-finding process is objective and reasonably explores the issues presented, the state trial judge's findings based on that investigation are entitled to a presumption of correctness."). To rebut this presumption, a petitioner must present clear and convincing evidence establishing that the state court's finding was erroneous. *See* 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004) ("Once the state court's fact-finding process survives this intrinsic review [,] . . . the state court's findings are dressed in a presumption of correctness [ ]" and may be overturned only if new evidence presented for the first time in federal court "amounts to clear and convincing proof that the state-court finding is in error."). Here, Petitioner has failed to demonstrate any flaw in the state court's fact-finding process, or present any evidence, let alone clear and convincing evidence, to support his claim. As such, the Court may properly defer to the state court's findings.

In addition, there were permissible inferences that the jury could draw from the gun and bullet evidence. The state appellate court noted that the evidence of a gun and bullet found in a place with Petitioner's indicia was admissible because either the gun or bullet could have been used in the robbery. *Bland*, 2017 WL 5899225, *4. The evidence presented at trial, including Petitioner's indicia in immediate proximity of the weapon and bullet, was sufficient to demonstrate that Petitioner had access to the gun and bullet. 9RT 540-541. As mentioned, the gun and bullet evidence was located in such close proximity to Petitioner's indicia that the inference of his access to the gun and bullet was not speculative. 9RT 540-541. Therefore, the admission of the gun and bullet evidence did not violate Petitioner's due process right to a fair trial. *See Jammal*, 926 F.2d at 920; *Holley*, 568 F.3d at 1101.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ultimately, however, the state appellate court concluded that had defense counsel more clearly articulated an objection to the gun and bullet evidence under California Evidence Code § 352, "there [was] no likelihood" the trial court would have found evidence that Petitioner had access to a gun was unduly prejudicial. *Bland*, 2017 WL 5899225, *5. Such a finding is objectionably reasonable because there was overwhelming evidence that Petitioner aided and abetted the robbery.

The record shows that Petitioner approached the victim to set up the robbery under the guise of arranging a large purchase of marijuana from the victim. 8RT 348-349, 351, 353-358. While the victim only knew the person he was dealing with as "Tip," the record shows that the victim later identified Petitioner in the courtroom as "Tip." 8RT 349, 353. On the day of the robbery, Petitioner originally met the victim at Outback Steakhouse in Marin City then led the victim to an address at which he did not live, while claiming they were headed to his garage to weigh the marijuana. 8RT 365-367, 369-370. When Petitioner reached the spot where the robbery was to occur, he started up the walkway toward the door but then slowed his pace. 8RT 371. This pinned the victim between Petitioner and the other robbery suspect, whom the victim had identified to be Wallace. 8RT 371. Wallace then immediately put a gun to the victim's head and ordered him to drop the marijuana bag. 8RT 371. Thereafter, two other men with guns arrived. 8RT 372-373. The victim recognized one of the men as the man who had been with Petitioner at Outback Steakhouse earlier that day, and the other as a man who had been walking around the same area. 8RT 372-373. They pointed their guns at the victim, ordered him to empty his pockets, forced him to get down, and ran away with his keys, his phone, and four pounds of marijuana. 8RT 372-373, 375-377, 381. Before the victim got down on the ground, he saw Petitioner standing against a wall "10, 15 feet away." 8RT 374-375. The victim stated that Petitioner did not attempt to stop the robbery or do anything to help him. 8RT 375. Petitioner remained at the scene the entire time and then walked to his car after the robbery. 8RT 375-376. Respondent points out that this evidence showed that Petitioner "intended to set up and facilitate the robbery and was not merely an innocent bystander." Dkt. 14-1 at 16. Later that night, the police showed the victim a nine-picture photo lineup, and he identified Petitioner's photo as "Tip"

with "[o]ne-hundred percent" confidence.  8RT 383-384; *Bland*, 2017 WL 5899225, *2.  Based on the aforementioned evidence on the record, Respondent further argues that "[t]he jury would have given the circumstantial gun and bullet evidence only limited weight in light of the other compelling evidence of guilt."  *Id.*  The Court agrees with Respondent and finds the state appellate court was objectively reasonable in finding no prejudice in the admission of the gun and bullet evidence.

Accordingly, the Court finds that the state appellate court's rejection of Petitioner's due process claim based on the allegedly erroneous admission of the gun and bullet evidence neither involved an unreasonable application of clearly established federal law nor was it based upon an unreasonable determination of facts.  *See* 28 U.S.C. § 2254(d)(1), (2).  Therefore, Petitioner is not entitled to habeas relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case.  For the reasons above, jurists of reason would not find this Court's denial of Petitioner's claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a certificate of appealability in this Court but may seek a certificate from the Ninth Circuit Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  *See* Rules Governing § 2254 Cases, Rule 11(a).

## V.   CONCLUSION

For the reasons outlined above, the Court orders as follows:

1.   The petition for a writ of habeas corpus is DENIED, and a certificate of appealability will not issue.  Petitioner may seek a certificate of appealability from the Ninth Circuit.

2.   The Clerk of the Court shall terminate any pending motions and close the file.

IT IS SO ORDERED.

Dated:  September 14, 2020

YVONNE GONZALEZ ROGERS
United States District Judge

United States District Court
Northern District of California